James E. MATTHEWS, Plaintiff–
Appellant,

v.

COMMONWEALTH EDISON
COMPANY, Defendant–
Appellee.

No. 96–3665.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 26, 1997.

Decided Nov. 17, 1997.

Sarah Vanderwicken (argued), Thomas H. Geoghegan, Leon M. Despres, Depres, Schwartz & Geoghegan, Chicago, IL, for Plaintiff–Appellant.

Julie O'Donnell Allen, Lisa D. Freeman, Sidley & Austin, Chicago, IL, Glenn D. Newman, Carolyn Kohn Winick (argued), Commonwealth Edison Company, Chicago, IL, for Defendant–Appellee.

Gwendolyn Young Reams, Carolyn L. Wheeler, Dori K. Bernstein (argued), Equal Employment Opportunity Commission, Ann Elizabeth Reesman, McGuiness & Williams,

Washington, DC, for Amicus Curiae Equal Employment Opportunity Commission.

Ann Elizabeth Reesman, McGuiness & Williams, Washington, DC, for Amicus Curiae Equal Employment Advisory Council.

Before POSNER, Chief Judge, and EASTERBROOK and DIANE P. WOOD, Circuit Judges.

POSNER, Chief Judge.

The district court granted summary judgment for Commonwealth Edison, the defendant in this suit by James Matthews under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq.; 941 F.Supp. 721 (N.D.Ill.1996). The appeal presents several issues: whether the Act has any application to bona fide RIF's (reductions in force), since the motivation for a bona fide RIF is to reduce the size of the employer's work force rather than to get rid of any particular worker; whether an employer ever can be said to have fired a disabled worker on grounds of disability when he fired him because of a condition positively correlated with a disability; and whether it is ever proper to fire an employee because of a condition that is at once positively correlated with a disability and not probative of the employee's current ability to do the job. We shall reverse the usual order of presentation in a judicial opinion and discuss the legal questions first and then their application to the facts.

■ A RIF is not an open sesame to discrimination against a disabled person. *Christie v. Foremost Ins. Co.*, 785 F.2d 584, 587 (7th Cir.1986). Even if the employer has a compelling reason wholly unrelated to the disabilities of any of its employees to reduce the size of its work force, this does not entitle it to use the occasion as a convenient opportunity to get rid of its disabled workers. *Hardin v. Hussmann Corp.*, 45 F.3d 262, 265–66 (8th Cir.1995); *Montana v. First Federal Savings & Loan Ass'n*, 869 F.2d 100, 106 (2d Cir.1989); *Herold v. Hajoca Corp.*, 864 F.2d 317, 320 (4th Cir.1988); cf. *Huff v. UARCO, Inc.*, 122 F.3d 374, 386 (7th Cir. 1997). This point is most easily seen by thinking of a RIF as a kind of hiring: the employer has decided to reduce its work force from, say, 100 to 80 employees; this means it has 80 slots to fill and in filling them must choose among 100 "applicants." The law forbids the employer to disqualify the disabled applicants on the basis of their disability unless the disability prevents them from doing the work even with a reasonable accommodation.

■ Turning to the second point, we have tried to make clear in our previous cases, and here repeat, that a fired (demoted, etc.) worker who cannot do the job even with a reasonable accommodation has no claim under the Americans with Disabilities Act. E.g., *Weigel v. Target Stores*, 122 F.3d 461, 468 (7th Cir.1997); *Palmer v. Circuit Court*, 117 F.3d 351, 352 (7th Cir.1997); *Weiler v. Household Finance Corp.*, 101 F.3d 519, 525 (7th Cir.1996); *Daugherty v. City of El Paso*, 56 F.3d 695, 698 (5th Cir.1995). The Act forbids discrimination against a "qualified" individual "because of the disability of such individual." 42 U.S.C. § 12112(a). An individual who cannot perform the essential functions of the job even with a reasonable accommodation to his disability by the employer is not "qualified," 42 U.S.C. § 12111(8), so the Act does not come into play. It is irrelevant that the lack of qualification is due entirely to a disability. A blind person cannot complain because a prison refuses to hire him as a guard. *Miller v. Illinois Dept. of Corrections*, 107 F.3d 483, 487 (7th Cir.1997). An alcoholic cannot complain about a trucking company's refusal to hire him as a driver because as a consequence of his alcoholism his driving license has been revoked. *Despears v. Milwaukee County*, 63 F.3d 635, 636–37 (7th Cir.1995). If an insulin-dependent diabetic cannot be depended upon to drive a bus safely, he cannot complain about being disqualified from working as a bus driver, *Daugherty v. City of El Paso, supra*, 56 F.3d at 698; *Myers v. Hose*, 50 F.3d 278, 282 (4th Cir. 1995), even though he can show that he would be fully qualified were it not for his being a diabetic.

■ The disabled individual's only recourse under the Act in such a case is to prove that the employer has fixed a qualification that bears more heavily on disabled than

on other workers and is not required by the necessities of the business or activity in question. This is the "disparate impact" approach to proving discrimination, *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609–10, 113 S.Ct. 1701, 1706, 123 L.Ed.2d 338 (1993), and it is applicable to cases under the Americans with Disabilities Act. 42 U.S.C. §§ 12112(b)(3)(A), 12112(b)(6); 29 C.F.R. Pt. 1630 App. § 1630.10; *Crowder v. Kitagawa*, 81 F.3d 1480, 1483–84 (9th Cir.1996). A rule of an employer requiring a pilot to have good vision or a truck driver a valid driver's license bears more heavily on the disabled than on the able-bodied, but it is reasonable and so is permitted. As we shall see, the plaintiff has waived any disparate-impact claim.

Even if the individual is qualified, if his employer fires him for any reason other than that he is disabled there is no discrimination "because of" the disability. This is true even if the reason is the consequence of the disability, as is implicit in the decisions cited earlier concerning the blind, alcoholic, or insulin-dependent worker. The employer who fires a worker because the worker is a diabetic violates the Act; but if he fires him because he is unable to do his job, there is no violation, even though the diabetes is the cause of the worker's inability to do his job. See *Hazen Paper Co. v. Biggins, supra,* 507 U.S. at 611, 113 S.Ct. at 1706–07 (an age case, but the principle is the same); *Siefken v. Village of Arlington Heights*, 65 F.3d 664, 666 (7th Cir.1995); *Anderson v. University of Wisconsin*, 841 F.2d 737, 740 (7th Cir. 1988).

Suppose that two workers are vying for a promotion to a job that requires a lot of reading. One of the workers is dyslexic, and as a result reads very slowly. He can do the job for which he is applying—and let us assume that his employer would give him the job if there were no other applicant for it—but he can't do it as well as the other applicant, who does not have a disability. It is not the dyslexic worker's "fault" that he can't read as well as his competitor; it is due entirely to his disability. The employer could not refuse to consider him for the promotion because of his dyslexia, but it is not disability discrimination for the employer to give the promotion to the other worker, the one who can do the job better. *Sirvidas v. Commonwealth Edison Co.*, 60 F.3d 375, 378 (7th Cir.1995); *Overton v. Reilly*, 977 F.2d 1190, 1195 (7th Cir.1992); *Aungst v. Westinghouse Electric Corp.*, 937 F.2d 1216, 1223 (7th Cir.1991).

■ Comparative considerations are particularly important in the context of a bona fide RIF, *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1084 n. 5 (11th Cir.1990); *Healy v. New York Life Ins. Co.*, 860 F.2d 1209, 1220 (3d Cir.1988), because the employer must decide which qualified workers to retain; he can't retain them all. To require him to retain the least able because of disability would handicap the able-bodied, and that is not required by the Act. Such handicapping, such discrimination in favor of the disabled, would invite the same criticisms as "reverse" discrimination on racial and sexual grounds—especially in a RIF case, where a better worker would lose a job to a worse one merely because the better worker had the good fortune not to be disabled. The Americans with Disabilities Act does not command affirmative action in hiring or firing. *Eckles v. Consolidated Rail Corp.*, 94 F.3d 1041, 1051 (7th Cir.1996); *Daugherty v. City of El Paso, supra*, 56 F.3d at 700, 29 C.F.R. Pt. 1630 App. (Background).

Of course in our hypothetical case of dyslexia it is open to the disabled worker to try to prove that he lost the promotion because his employer dislikes people with disabilities, not because his inability to read quickly made him the worse choice for the job. 42 U.S.C. § 12102(2)(C); *Vande Zande v. Wisconsin Department of Administration*, 44 F.3d 538, 541 (7th Cir.1995). That is, it would be open to the dyslexic worker to try to prove that he was a victim of intentional discrimination, that comparative reading speed was merely a pretext. If he doesn't want to bear that burden of proof—if he wants to show instead that reading quickly is not a necessary qualification for the job in question—then he has to switch to the disparate-impact approach and challenge the qualification on the basis of its effect and its reasonableness rather than on the basis of its motivation.

The RIF setting brings into view the third of our questions, what one might call the retrospective application of the principle that a personnel action that is based on a disability-related cause is not itself an action *because of* a disability. In a RIF an employer has to make painful choices among qualified workers. Suppose it decides that the best way to do this is to confine eligibility for the diminished number of slots to workers who put in overtime work the previous year. Suppose one of the workers rendered ineligible by this decision can prove that had he not been disabled that year he would have put in overtime; suppose further that he has recovered from his disability and is now entirely capable of performing to the employer's satisfaction. We think that in a situation such as that (which has not been the subject of a published case), the disabled employee still must prove either that the rule is a pretext for weeding out disabled employees or that it bears more heavily on the disabled and is not justified by the needs of the business. Otherwise it is a reasonable criterion of retention that just happened to hit a disabled worker. We cannot see what difference it makes in principle whether (as in our example of dyslexia) the employer prefers a worker who can do the job better simply because he is not disabled, or prefers a worker who, again simply because he is not disabled, performed better last year. This would be obvious if the issue were not retention but a bonus.

■ Now to the facts of this case. Matthews was a managerial employee in one of Commonwealth Edison's electrical generating plants until July 1991, when at the age of 48 he suffered a severe heart attack. On doctor's orders he did not return to work until January of the following year and when he did return it was on a part-time basis, starting at two hours a day, working up to six hours, then eight, then back to six, although sometimes he would put in another two hours at home using software provided him by Commonwealth Edison. Because of the limitations on the number of hours he could work, he was not reinstated in the position of Electrical Maintenance Supervisor that he had held when he had the heart attack. Instead he was given a nonsupervi-

sory job, though at the same pay, that of Department Training Coordinator.

Commonwealth Edison makes annual performance ratings of its employees on a 9-point scale. The ratings are based on the quality and quantity of work performed. Because of Matthews' heart attack in mid-1991, he was out the rest of the year, and the quantity of work that he performed that year was therefore only about half the normal amount. As a result, he received a rating for that year of only 4, the lowest rating consistent with "fully meeting expectations."

The RIF came in the summer of 1992. The company decided to use performance rather than seniority as the basis for retention decisions. Each supervisor was asked to rank the workers he supervised from the most to the least valuable. Matthews' supervisor rated him as least valuable on the basis of his low rating for 1991 and the fact that during the current year (1992) he was working on a reduced schedule and being paid a supervisor's wage for nonsupervisory work.

There is no contention that the RIF was a pretext for getting rid of disabled workers or workers belonging to any other group protected by federal antidiscrimination law. Yet, as Matthews argues, if he hadn't been disabled from working full-time as a result of his heart attack (which Commonwealth Edison concedes he was, perhaps mistakenly, since, as we are about to see, Matthews' disability appears to have been temporary, and the temporarily disabled are not protected by the Americans with Disabilities Act, 29 C.F.R. Pt. 1630 App. § 1630.2(j)), he would not have gotten a low rating for 1991 or worked in a part-time nonsupervisory job in 1992. As a result, he probably would not have been laid off. But there is no evidence that the company laid him off because he was disabled, rather than because of the stated reasons that he had contributed little in 1991 and was working only part-time in 1992. He has not tried to make a disparate-impact case by presenting evidence that the rating system bears more heavily on the disabled and is not justified by the needs of Commonwealth Edison's business. He mentions the point in a sentence in his brief, but neither develops nor substantiates it; it is therefore

waived, and we do not consider it. His case is that he was discharged because of his disability, and that the employer has failed to justify the discrimination.

He fails at the first step. He was not discharged because of his disability. He was discharged because of a *consequence* of the disability—his absence from work the last half of 1991 and his not working full-time the following year. It may have been foolish for Commonwealth Edison to base its retention decisions on what workers had done in the past rather than on what they were likely to do in the future; Matthews' lawyer told us at argument that his client has now recovered fully and is working full-time for another employer in a job similar to the one he held at Commonwealth Edison before his heart attack. (That is why we expressed doubt whether he really is disabled within the meaning of the Americans with Disabilities Act; but this doubt plays no role in our decision.) We do not say that it was foolish. The company had painful choices to make and rewarding the people who had done or were doing the most work may have been a sensible criterion from the standpoint of maintaining good relations with, or motivating, its remaining employees. But foolish or not, it was not actionable under the ADA because it was not based on disability, although it was correlated with it.

Imagine that Matthews were seeking full pay for the six months of 1991 that he was absent from work because of his heart attack. As there is no suggestion that Commonwealth Edison caused his heart attack, no court would hold that the ADA entitled him to be paid for that period of nonwork merely because he would have worked and been paid had it not been for his heart attack. Cf. *Saulpaugh v. Monroe Community Hospital,* 4 F.3d 134, 145 (2d Cir.1993). This case is essentially the same. Commonwealth Edison gave a kind of bonus to people who had worked continuously through 1991 and 1992, the bonus consisting of a better shot at surviving the RIF. Matthews could not get this bonus because he was ill, but he was no more entitled to it as a matter of

federal disability law than he would have been to salary for the time that he missed.

AFFIRMED.