Rodney Wayne THOMPSON, Plaintiff,

v.

DOT FOODS, INC., Defendant.

No. 96–3255.

United States District Court,
C.D. Illinois,
Springfield Division.

June 5, 1998.

John V. Boshardy, Springfield, IL, for Plaintiff.

Donald R. Tracy, Springfield, IL, for Defendant.

## OPINION

RICHARD MILLS, District Judge.

Plaintiff does not consider himself to be disabled.

Defendant does not consider Plaintiff to be disabled.

Plaintiff admits that Defendant did not discriminate against him by awarding a vacant job to someone else.

Then, should Plaintiff prevail in a discrimination suit brought pursuant to the Americans with Disabilities Act?

Of course not!

## I. BACKGROUND

On September 4, 1982, Rodney Wayne Thompson began working as an over-the-road truck driver for Dot Foods, Inc. On November 4, 1990, Thompson injured his back in a non-work related accident. This accident caused him to miss work for three months. When Thompson was released by his chiropractor, Charles F. Smith, on February 4, 1991, to return to work, Dot Foods assigned him to temporary light duty work which complied with chiropractor Smith's recommendation that Thompson lift no more than 50 pounds. After performing this temporary light duty work for approximately a week,[1] Thompson returned to his previous, full-time position.

On May 2, 1991, Thompson injured his right arm and low back while making a delivery for Dot Foods in Memphis, Tennessee. Despite his injuries, Thompson continued to work full-time as an over-the-road truck driver for Dot Foods until chiropractor Smith placed him on medical leave on November 8, 1991. On February 17, 1992, Plaintiff, again, returned to temporary light duty work with Dot Foods. This time, however, Thompson's temporary light duty work was that of a "Transportation Support Assistant."[2] Thompson remained in this position from February 1992 until July 16, 1993.[3]

On March 31, 1993, Thompson gave Dot Foods a written statement from his physician, Dr. James Maxey, which stated that it was Dr. Maxey's opinion that switching Thompson, long term, to a more sedentary work status would be in his best interest. Accordingly, on April 25, 1993, Thompson applied for a vacant dispatcher position with Dot Foods.[4] Although Thompson performed well on the tests given by Dot Foods to the dispatcher applicants, Dot Foods hired Ted Scheer for the position.

On June 13, 1993, Thompson informed Dot Foods that Dr. Maxey had imposed new work restrictions upon him. Specifically, Thompson could not lift more than 25 pounds or drive more than 30 miles at one time.[5] After Dr. Maxey placed Thompson on these work restrictions, both Thompson and Dot Foods realized that Thompson would be unable to return to his former position as an over-the-road truck driver in the foreseeable future. Thus, Dot Foods decided that Thompson should devote his time and energy to vocational rehabilitation. After his temporary light duty assignment ended on July 16, 1993, Dot Foods assigned Thompson to vocational rehabilitation at no expense to him.

---

1. This temporary light duty work consisted mainly of "turnarounds" which are over-the-road deliveries in which someone other than the driver unloads and loads the truck.

2. Dot Foods' light duty positions, such as transportation support assistant, were temporary assignments for injured drivers and were intended to be a rehabilitative measure to facilitate injured or restricted drivers in returning to their previous positions.

3. However, Thompson had many absences during this time period due to medical as well as other reasons. In fact, Thompson only worked 144 days during this 17 month period.

4. Thirty-one applicants applied for Dot Foods' dispatcher position.

5. Thompson admits that Dr. Maxey arrived at these restrictions by relying upon his own opinion as to how much he could lift during therapy without aggravation and how long it took for his legs to go to sleep.

Thompson believed that as of July 16, 1993, his employment with Dot Foods had been terminated. However, Dot Foods considered Thompson to be one of its employees until he resigned on September 23, 1993, asserting that Thompson continued to receive profit sharing, vacation pay, and medical benefits until he resigned.

## II. STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c); see *Ruiz–Rivera v. Moyer*, 70 F.3d 498, 500–01 (7th Cir.1995). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In determining whether a genuine issue of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Howland v. Kilquist*, 833 F.2d 639 (7th Cir.1987).

## III. ANALYSIS

Dot Foods argues that it is entitled to summary judgment because Thompson is not "disabled" as that term is used in the Americans with Disabilities Act ("ADA") nor is he a qualified individual with a disability who, with or without a reasonable accommodation, can perform the essential functions of his position as an over-the-road truck driver. In addition, Dot Foods asserts that it did not discriminate against Thompson in its decision not to hire him for its dispatcher position. Moreover, Dot Foods claims that Thompson was not qualified for the dispatcher position. Accordingly, Dot Foods argues that it is entitled to summary judgment.

On the other hand, Thompson argues that he ·is entitled to summary judgment. Thompson asserts that he is both "disabled" and a "qualified individual with a disability" as those terms are defined by the ADA. Thompson also asserts that Dot Foods failed to provide a reasonable accommodation(s) for his disability as required by the ADA. Finally, Thompson claims that he suffered an adverse employment action when Dot Foods terminated his employment. Accordingly, Thompson argues that he is entitled to summary judgment.

Before turning to the merits of this case, a quick aside. The Court is puzzled (maybe even troubled) as to why Thompson has filed this suit. The purpose of the ADA is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). However, Thompson stated at his deposition that he does not consider himself to be disabled [6] and admits in his pleadings that Dot Foods did not consider him to be disabled. Moreover, Thompson admitted at his deposition that Dot Foods did not discriminate against him relative to his application for its dispatcher posi-

---

**6.** Q. Mr. Thompson, are you disabled now?
A. I don't know how to answer that. Under Social Security I am technically. I don't feel that I am now. I've never, I don't think I have been judged disabled.

\* \* \* \* \* \*

Q. Mr. Thompson, were you disabled in 1993?

A. I was under work restrictions, but I don't know, I didn't consider myself disabled.

\* \* \* \* \* \*

Q. Do you believe that you are permanently and totally disabled from any and all occupations?
A. No.

tion.[7] Thus, the Court queries: if Thompson did not consider himself to be disabled and does not believe that he was treated unfairly by Dot Foods, why has he filed a suit alleging discrimination based upon his disability? The Court could, perhaps, end our inquiry here; nevertheless, we will turn to the merits of the parties' motions.

"In order for a plaintiff to recover under the ADA for an employer's failure to reasonably accommodate he must show (1) that he 'was or is disabled' as defined by the Act, (2) that [his employer] was aware of this disability, and (3) that he was 'qualified' for the position in question.'" *Baulos v. Roadway Express, Inc.,* 139 F.3d 1147, 1151 (7th Cir. 1998), quoting *Best v. Shell Oil Co.,* 107 F.3d 544, 547–48 (7th Cir.1997); *DeLuca v. Winer Indus., Inc.,* 53 F.3d 793, 797–98 (7th Cir. 1995). The ADA defines disability as: "(A) a physical or mental impairment[8] that substantially limits[9] one or more of the major life activities[10] of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2)(footnotes added). Whether an individual suffers from an ADA recognized disability is "an individualized [question], and must be determined on a case by case basis." *Roth v. Lutheran Gen. Hosp.,*

57 F.3d 1446, 1454 (7th Cir.1995), citing *Byrne v. Bd. of Educ., Sch. of West Allis–West Milwaukee,* 979 F.2d 560, 564 (7th Cir. 1992).

Thompson's basic claim is that he is a qualified individual with a disability which substantially limits him in the major life activity of working and that Dot Foods violated its duty under the ADA when it failed to reasonably accommodate him by denying him the vacant dispatcher position. The United States Court of Appeals for the Seventh Circuit has explained that

[t]o demonstrate a significant limitation on [the] ability to work, it is not enough for the plaintiff to show that her impairment "prevented [her] from performing one narrow job for one employer." *Best v. Shell Oil Co.,* 107 F.3d 544, 548 (7th Cir.1997); *see* 29 C.F.R. § 1630.2(j)(3)(i). She must show instead that she was "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Id.; Weiler v. Household Fin. Corp.,* 101 F.3d 519, 525 (7th Cir. 1996).[11]

*Davidson v. Midelfort Clinic, Ltd.,* 133 F.3d 499, 506 (7th Cir.1998).

7. Q. Relative to your application for the dispatcher position, were you treated fairly by Dot Foods?
A. Yes.
Q. Were you discriminated against relative to your application for the dispatcher position in any way in 1993?
A. I don't believe so.

8. "Physical or mental impairment" is defined as "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, hemic, and lymphatic, skin, and endocrine; or (2)[a]ny mental or physical disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h).

9. A substantial limitation is one that leaves the individual either unable to perform a major life activity or significantly restricted "as to the condition, manner or duration" of performance of that activity. 29 C.F.R. § 1630.2(j)(1).

10. "Major life activity" means "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i); *Knapp v. Northwestern Univ.,* 101 F.3d 473, 480–81 (7th Cir.1996); *Homeyer v. Stanley Tulchin Assoc., Inc.,* 91 F.3d 959, 962 (7th Cir.1996).

11. Factors that the court may consider in assessing the degree of limitation that an impairment imposes on the plaintiff's ability to work include (1) the geographical area to which the plaintiff has reasonable access; and (2) the job from which the plaintiff has been disqualified because of the impairment and (a) the number and kinds of jobs in the plaintiff's geographical area utilizing comparable training, knowledge, skills or abilities from which the plaintiff is also disqualified because of his impairment, as well as (b) the number and kinds of jobs in the same area not utilizing comparable training, knowledge, skills or abilities but from which the plaintiff is nonetheless disqualified because of his impairment. 29 C.F.R. § 1630.2(j)(3)(ii).

■ In the instant case, the Court finds that Thompson has shown that he was significantly restricted in performing a class or broad range of jobs. Given Thompson's work restriction, he could no longer perform the essential functions of an over-the-road truck driver, not only for Dot Foods, but for any employer. Although Thompson could have made deliveries as an over-the-road truck driver which did not require him to load or unload the truck, his 30 mile driving restriction precluded him from being an over-the-road truck driver for any employer. *Best,* 107 F.3d at 548. Moreover, although neither the ADA nor its implementing regulations define the terms "class of jobs" or "broad range of jobs," the Court believes that the examples provided in 29 C.F.R. Pt. § 1630, App. § 1630.2(j) lend credence to the Court's finding:

> an individual who has a back condition that prevents the individual from performing any heavy labor job would be substantially limited in the major life activity of working because the individual's impairment eliminates his or her ability to perform a class of jobs. This would be so even if the individual were able to perform jobs in another class, *e.g.,* the class of semi-skilled jobs. Similarly, suppose an individual has an allergy to a substance found in most high rise office buildings, but seldom found elsewhere, that makes breathing extremely difficult. Since this individual would be substantially limited in the ability to perform the broad range of jobs in various classes that are conducted in high rise office buildings within the geographical area to which he or she has reasonable access, he or she would be substantially limited in working.

Dot Foods argues that Thompson was not disabled because his work restrictions were based upon his own subjective opinion as to how much he could lift and how far he could drive. Nevertheless, those restrictions were imposed by Thompson's doctor and were not contradicted by the independent medical examiner hired by Dot Foods. Dot Foods also argues that Thompson is not disabled under the ADA as a matter of law. In so arguing, Dot Foods relies upon opinions from various courts which set a minimum threshold on what constitutes a substantial limitation on a major life activity. *E.g., Williams v. Channel Master Satellite Sys., Inc.,* 101 F.3d 346, 349 (4th Cir.1996)(holding that a 20 to 25 pound lifting limitation does not constitute a significant restriction on one's ability to lift, work, or perform any major life activity); *Aucutt v. Six Flags Over Mid–America,* 85 F.3d 1311, 1319 (8th Cir.1996)(same); *Kelly v. Drexel Univ.,* 94 F.3d 102, 108 (3rd Cir.1996)(holding that the inability to walk more than a mile and difficulty climbing stairs did not substantially limit the major life activity of walking); *Bolton v. Scrivner, Inc.,* 36 F.3d 939, 943 (10th Cir.1994)(holding that the inability to stand for prolonged periods on concrete did not substantially limit the major life activity of working).

However, as of today, the Seventh Circuit has not yet adopted a similar position;[12] rather, the Seventh Circuit has focused on the "class of jobs" which a plaintiff can perform. *DePaoli v. Abbott Lab.,* 140 F.3d 668, 671–72 (7th Cir.1998); *Dalton v. Subaru–Isuzu Automotive, Inc.,* 141 F.3d 667, 674–75 (7th Cir.1998). As noted above, Thompson could no longer perform his class of job (*i.e.,* over-the-road truck driver). Thus, although there is room for debate, the Court will assume that Thompson is "disabled" for ADA purposes. *But see DePaoli,* 140 F.3d at 671 (Evans, J. concurring)(holding that because the plaintiff obtained subsequent employment, her medical condition was a "physical impairment" rather than a "disability" which substantially affected the major life activity of working); *see also Dalton,* 141 F.3d at 681 (Evans, J. concurring)(same).

■ The next issue is whether Thompson is a qualified individual with a disability. The Seventh Circuit has made clear that an employee does not have an ADA claim if he, even with a reasonable accommodation, cannot do the job for which he was hired. *Matthews v. Commonwealth Edison Co.,* 128 F.3d 1194, 1195 (7th Cir.1997). Further-

12. Obviously, if the Seventh Circuit were to adopt the Fourth and Eighth Circuit's positions, Thompson would not be disabled as defined by the ADA, and his claim would end here.

more, "[i]t is irrelevant that the lack of qualification is due entirely to a disability." *Id.*

In the present case, Thompson admits that he could not perform the essential functions of an over-the-road truck driver, with or without a reasonable accommodation(s).[13] However, Thompson argues that the reasonable accommodation which he sought and which Dot Foods denied was a transfer to the vacant dispatcher position. As the Seventh Circuit noted in *DePaoli*, this argument finds some support in the ADA:

> [t]he term "reasonable accommodation" may include—(B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

*DePaoli*, 140 F.3d 668, 673, quoting 42 U.S.C. § 12111(9)(B). The Seventh Circuit also explained in *DePaoli* the extent of an employer's duty to accommodate *via* a transfer to another position:

> the duty under § 12111(9)(B) to "reassign[ ] to a vacant position" requires the employer to consider a reassignment to any position for which the employee satisfies the employer's legitimate, nondiscriminatory prerequisites, and for which the employee is capable of performing the alternative job's essential functions, with or without reasonable accommodations. *Id.*, 140 F.3d at 675. This has the effect of making the duty to transfer to another position roughly commensurate with the full class or range of jobs the employee is capable of performing. This does not mean that an enlightened employer is forbidden to waive its nondiscriminatory prerequisites, such as a prior experience requirement or a designation that a position is for temporary use only. *See, e.g., Dalton*, 141 F.3d at 674 (citing examples of legitimate nondiscriminatory prerequisites). Indeed, the employer could adopt a policy like Abbott's, where a person will be considered for virtually every job in the company before termination. Nonetheless, the ADA affirmatively compels consideration of job reassignment to a vacant position only for the more restricted class of positions we describe here and in *Dalton*.

*DePaoli*, 140 F.3d 668, 675.

■ However, the ADA does not require an employer to provide everything which a disabled employee requests. *Stewart v. County of Brown*, 86 F.3d 107, 110–11 (7th Cir.1996). "Rather, reassignment is one among many alternative accommodations that an employer reasonably may offer." *Schmidt v. Methodist Hosp. of Indiana, Inc.*, 89 F.3d 342, 344 (7th Cir.1996); *Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir.1996)(holding that an employer is not obligated to provide a disabled employee with the accommodation he prefers, only with a reasonable accommodation).

■ The Court finds that Thompson is not a qualified individual with a disability. First, nothing in the ADA requires an employer to abandon its legitimate hiring/transfer policies and practices. *Dalton*, at 677 (citing cases); *Hendricks–Robinson v. Excel Corp.*, 972 F.Supp. 464, 469 (C.D.Ill.1997). A total of 31 applicants applied for Dot Foods' dispatcher position. In the Court's opinion, the ADA did not require Dot Foods to give Thompson its dispatcher position simply because he was disabled. Congress enacted the ADA to eliminate discrimination against the disabled. 42 U.S.C. § 12101(b)(1). Dot Foods considered all of the applications, interviewed some, and hired the person which it believed was the most qualified for the job and best met the company's needs, without regard to any applicant's disability. Federal courts are not to be sitting as super-personnel departments approving and disapproving every new hire, promotion, transfer, demotion, or termination. *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 678 (7th Cir.1997).

It is important to note that Thompson has failed to point to any evidence that Dot

---

13. Q. Mr. Thompson, is there any way that the job as an OTR driver may change so as to allow someone with your restrictions to do the job?

A. I don't believe so.

Foods discriminated against him when it hired Ted Scheer, rather than him, for the dispatcher position. In fact, as noted above, Thompson admits that Dot Foods treated him fairly and did not discriminate against him in considering his application for the dispatcher position.

■ Second, Dot Foods provided reasonable accommodations to Thompson. When Thompson was unable to return to his previous position, Dot Foods provided him with a temporary light duty position. *Dalton*, at 674; *Hendricks-Robinson*, 972 F.Supp. at 469; 29 C.F.R. Pt. 1630, App. § 1630.9. In addition, Dot Foods provided Thompson with health benefits, prolonged illness pay, and vocational rehabilitation at no expense to him. *Hankins v. The Gap, Inc.*, 84 F.3d 797, 801 (6th Cir.1996); *Robinson v. Neodata Serv., Inc.*, 94 F.3d 499, 502 (8th Cir.1996). Initially, Thompson agreed to enter vocational rehabilitation; however, he refused to cooperate once in the program. "An employee cannot refuse reasonable accommodations during the interactive process the statute contemplates, and then after dismissal suggest something different and claim that the employer still has a duty to consider further accommodations." *Webster v. Methodist Occupational Health Centers, Inc.*, 141 F.3d 1236, 1237 (7th Cir.1998).

■ Furthermore, Dot Foods posted a total of 24 available positions between February 17, 1992, and September 23, 1993; however, Thompson applied for only one, *i.e.*, the dispatcher position. Although Dot Foods had a duty to engage in an interactive process with Thompson to determine how best to reasonably accommodate him (*Beck v. Univ. of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1134 (7th Cir.1996); 29 C.F.R. § 1630.2(*o*)(3)), it did not have a duty "to find another job for an employee who is not qualified for the job he or she was doing." [14] *Schmidt*, 89 F.3d at 344.

The Court believes that Thompson was the cause of the break-down in the interactive process by failing to apply for at least some of those available positions. *Beck*, 75 F.3d at 1134. Because Thompson considered his application for the dispatcher position to be a request for a reasonable accommodation, it is reasonable to assume that he would have applied for at least some of the other available jobs, thereby, making his request for a reasonable accommodation known to Dot Foods. *See Ferry v. Roosevelt Bank*, 883 F.Supp. 435, 441 (E.D.Mo.1995), quoting *Schmidt v. Safeway, Inc.*, 864 F.Supp. 991, 997 (D.Or.1994) (holding that an "employee can't expect the employer to read his mind and know he secretly wanted a particular accommodation and sue the employer for not providing it"); *see also Braziel v. Loram Maintenance of Way, Inc.*, 943 F.Supp. 1083, 1099 (D.Minn.1996)(holding that an employee must specifically request the particular accommodation which he seeks).

Third, Thompson was not qualified for the dispatcher position. Normally, the Court would be precluded from entering summary judgment on this point because Thompson asserts and Dot Foods denies that he was qualified for the dispatcher position. However, Thompson admits that between February 17, 1992, and July 16, 1993, he only worked a total of 144 days.[15] "Obviously, an employee who does not come to work cannot perform the essential functions of his job." *Nowak v. St. Rita High Sch.*, 142 F.3d 999, 1003 (7th Cir.1998); *Tyndall v. Nat'l Educ. Centers, Inc. of California*, 31 F.3d 209, 213 (4th Cir.1994).

## IV. CONCLUSION

Accordingly, based upon the above analysis, the fact that Thompson did not consider himself to be disabled either now or when employed by Dot Foods, and the fact that Thompson did not believe that Dot Foods discriminated against him when considering his application for the dispatcher position, the Court finds that Thompson is not a quali-

---

14. Dot Foods asserts that it engaged in the interactive process; Thompson denies that it did.

15. Dot Foods' attendance policy states: "Attendance is critical to the efficient operation of our company and to meeting the service require-

ments of our customers. Excellent attendance and punctuality are the targets for all employees, and unavoidable absences are acceptable only with reasonable limits."

fied individual with a disability which sub-stantially limits the major life activity of working. As such, the Court finds that there are no genuine issues of material fact to be determined by the jury and that Dot Foods is entitled to summary judgment as a matter of law. Fed. R. Civ. Pro. 56(c).

*Ergo*, Defendant's Motion for Summary Judgment is ALLOWED, and Plaintiff's Motion for Summary Judgment is DENIED. Accordingly, summary judgment is hereby entered in favor of Defendant and against Plaintiff on both Counts of his Complaint. This case is DISMISSED WITH PREJUDICE.