In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-1963

SEAN ROBERTS and STEVEN HILL,

*Plaintiffs-Appellants*,

*v.*

CITY OF CHICAGO,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14-cv-02840 — **Charles P. Kocoras**, *Judge*.

ARGUED JANUARY 14, 2016 — DECIDED MARCH 31, 2016

Before FLAUM and RIPPLE, *Circuit Judges*, and PETERSON,
*District Judge*.*

FLAUM, *Circuit Judge*. Plaintiffs Steven Hill and Sean Roberts filed this suit against the City of Chicago alleging discrimination under the Americans with Disabilities Act, 42 U.S.C.

_____

* Of the Western District of Wisconsin, sitting by designation.

§ 12101 *et seq.* ("ADA"). Hill and Roberts were both members of the plaintiff-class in *Lewis v. City of Chicago*, which resulted in an order that the Chicago Fire Department ("CFD") hire the first 111 class members to complete the court-mandated hiring process. Plaintiffs completed the hiring process but were never offered positions after they failed their initial medical screenings. In their complaint, plaintiffs allege that the failure to hire them violated the ADA. The district court held that plaintiffs' complaint failed to state a claim for relief. Because their complaint does not adequately allege a violation of the ADA, we affirm.

## I. Background

Plaintiffs are two African-American men who applied for firefighter positions with the CFD in 1995. Plaintiffs were not hired because of their scores on a required pre-employment examination. In *Lewis v. City of Chicago*, Hill and Roberts joined a class of roughly 6,000 other similarly situated African-American applicants who were denied employment based on their examination scores. No. 98-cv-5596, 2005 WL 693618 (N.D. Ill. Mar. 22, 2005). The *Lewis* class argued that the City's hiring process had an unjustified adverse impact on African-American applicants. The Northern District of Illinois agreed and held that the examination violated Title VII. *Id.* at *1.

After a series of appeals, on August 17, 2011, the *Lewis* court ordered the City to hire 111 of the class members who were denied employment based on their examination scores and to provide monetary compensation to the remaining class members. The court specified a four-step hiring process. First, the City had to notify class members of the hiring process. Second, the City had to compile a randomized list of class

members who indicated an interest in a firefighter position. Third, the City had to extend offers to advance in the hiring process to class members in the order in which their names appeared on the list. Finally, pursuant to the order, "the first 111 class members to undergo the background investigation, physical abilities test, drug screen and medical examination and to pass all of them shall be offered employment by the City as [CFD] candidate firefighters … ." The *Lewis* court imposed strict deadlines for each of these steps.

In October 2011, plaintiffs received a letter from the City informing them that they were among the class members who would be considered for a firefighter position. Hill was number 181 on the list; Roberts was number 302. They were advised that they would need to complete a physical abilities test, a drug screening, and a background check. By January 5, 2012, both plaintiffs successfully completed these requirements. On February 22, they were notified—allegedly for the first time—that they also needed to pass a medical screening. On February 23, plaintiffs received offers of employment conditioned on their completion of the medical screening.

On February 24, 2012, the City conducted a medical examination of Hill. Hill alleges that he suffers from asthma and has had past problems with a hernia and kidney stones. On March 2, the City informed Hill that he would need to repeat some of the physical testing "due to abnormal numbers" and to provide a release from his doctor for a past hernia surgery and a kidney stone removal. On March 7, Hill submitted the requested documents. On March 9, the City told Hill that he would need to undergo more testing and to submit additional documentation related to his hernia and kidney stone proce-

dures. On March 15, Hill provided all of the requested documents except a pulmonary medical release, which he provided the next day. The start of firefighter candidate training for the *Lewis* class members was scheduled for March 16, a fact Hill was aware of. Yet after submitting his pulmonary medical release on March 16, the City assured Hill that he was "still in the running." On April 2, the City found Hill to be medically qualified for a position but never hired him.

On February 27, 2012, the City conducted Roberts's medical examination. Roberts alleges that he suffers from bronchitis. On March 8, the City informed Roberts that he had failed a pulmonary functions test and therefore would need to provide further medical documentation and blood work by March 15. Roberts did as instructed, but the City never contacted Roberts and never hired him.

On April 20 and 23, plaintiffs filed charges with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued plaintiffs right-to-sue letters and plaintiffs filed this suit in the Northern District of Illinois on April 21, 2014 for monetary damages. Their amended complaint alleges that the City discriminated against Roberts on the basis of his bronchitis and that the City discriminated against Hill on the basis of his asthma and past problems with a hernia and kidney stones.

The City moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) and on April 3, 2014, the district court granted the City's motion. The court held that the complaint did not state a plausible claim for relief because it did not sufficiently allege that plaintiffs were not hired because of their actual or perceived disabilities. Plaintiffs appeal.

## II. Discussion

We review a district court's grant of a 12(b)(6) motion to dismiss de novo. *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). In construing the complaint, we accept all well-pleaded facts as true and draw reasonable inferences in the plaintiffs' favor. *Id.* To survive a motion to dismiss, the complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must do more than recite the elements of a cause of action in a conclusory fashion. *Id.*

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures [and] hiring … ." 42 U.S.C. § 12112(a). To prove a violation of § 12112(a), a plaintiff must show that: (1) he is disabled; (2) he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) the adverse job action was caused by his disability. *See Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 286–87 (7th Cir. 2015). In order to establish causation at this stage, plaintiffs must plead sufficient facts supporting an inference that the City discriminated against them "on the basis of disability." § 12112(a). Accordingly, plaintiffs must sufficiently allege that the City would have hired them "but for" their disability.[1] *Arroyo*, 805 F.3d at 287.

---

[1] It remains an open question whether the 2008 amendment to the ADA, which changed the statute's causation language from "because of"

In their complaint, plaintiffs claim that the City discrimi-
nated against them by subjecting them to a battery of medical
tests and record requests that prevented them from being
hired. They allege that these tests and requests were caused
by plaintiffs' disabilities and that the resulting delay in obtain-
ing medical clearance sounded the death knell of their em-
ployment prospects. Hill and Roberts concede that the City
can require some medical testing but argue that it cannot
"structure the hiring process as an obstacle course in which
individuals with disabilities are given no reasonable oppor-
tunity to demonstrate, in a timely manner that they are qual-
ified to be hired despite their disabilities."

These allegations, however, do not plausibly state that the
City discriminated against Hill and Roberts because of their
disabilities. Certainly, plaintiffs' disabilities disadvantaged
them in this first-come-first-serve hiring process ordered by
the *Lewis* court because their medical issues delayed their
medical clearance. But to prove causation under the ADA,
plaintiffs must show that they were not hired because of their
disabilities, not because of a delay in medical clearance, even
if that delay was caused by their disabilities.

For example, in *Matthews v. Commonwealth Edison Co.*, 128
F.3d 1194 (7th Cir. 1997), we considered whether a defendant-
company discriminated against a plaintiff-employee by ter-
minating him as part of a reduction in force. The plaintiff was

---

to "on the basis of," altered the substantive standard. *See Arroyo*, 805 F.3d
at 287 n.3. Since the particular causation standard does not affect the out-
come of this case and neither party argues that another standard should
apply, we continue to apply the pre-2008 causation standard. *See id.* ("The
issue was not briefed by the parties, and the answer would not affect the
outcome here in any case, so we need not resolve this issue.").

given a low performance rating based on the quantity and quality of his work. However, the plaintiff's low rating was caused by his disability: He had suffered a severe heart attack the year before and, as a result, could only work part-time. We concluded that even though the plaintiff would not have received a low performance rating but for his heart attack, and thus probably would not have been laid off, "there is no evidence that the company laid him off because he was disabled, rather than because of the stated reasons that he had contributed little" during the performance period. *Id.* at 1197. In other words, the plaintiff "was not discharged because of his disability. He was discharged because of a *consequence* of the disability … ." *Id.* at 1198.

This case is indistinguishable from *Matthews*. Hill and Roberts allege that the City failed to hire them not because of their disabilities, but rather due to the extensive medical requests that were a *consequence* of their disabilities. As we held in *Matthews*, this is insufficient to demonstrate causation. Perhaps plaintiffs could have argued that these medical requests were in fact a pretext for intentional discrimination, but they made no effort to do so.

Nor do plaintiffs plausibly allege that the medical requests themselves violated the ADA. The ADA permits an employer to "condition an offer of employment on the results of [a medical] examination if," *inter alia*, "all entering employees are subjected to such an examination regardless of disability … ." § 12112(d)(3); *see also* 29 C.F.R. § 1630.14(b) ("A covered entity may require a medical examination (and/or inquiry) after making an offer of employment to a job applicant … and may condition an offer of employment on the results of such examination (and/or inquiry), if all entering employees in the

same job category are subjected to such an examination (and/or inquiry) regardless of disability.”). And medical examinations and inquiries made under § 12112(d)(3) need not be job-related. *See O'Neal v. City of New Albany*, 293 F.3d 998, 1008 (7th Cir. 2002).

Plaintiffs claim that the City's medical requests were “unreasonable” and that the medical screening “did not give individuals with disabilities adequate time to comply.” But neither of these allegations, even if taken as true, demonstrates a violation of the statute. Indeed, at no point do plaintiffs argue that these medical requests violated § 12112(d), perhaps because the statute does not state that these medical requests must be reasonable or that employers must give disabled applicants sufficient time to comply.

Although plaintiffs' complaint does not mention disparate impact, the substance of plaintiffs' allegations resembles such a claim. Disparate impact claims under the ADA “involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity.” *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003) (internal citation and quotation marks omitted); *see also* § 12112(b) (recognizing disparate impact claims). Essentially, plaintiffs allege that the City forced them to undergo medical screenings that imposed a greater burden on disabled applicants than non-disabled applicants.

But their complaint fails to state a plausible claim for relief under this theory as well. The complaint alleges that the City discriminated against Hill and Roberts, not disabled applicants generally. And the complaint is devoid of any “factual content … tending to show that the City's testing process, or

some particular part of it, caused a relevant and statistically significant disparity between" disabled and non-disabled applicants. *Adams v. City of Indianapolis*, 742 F.3d 720, 733 (7th Cir. 2014), *cert. denied*, 135 S. Ct. 286 (2014). Further, to succeed on a disparate impact claim based on the City's medical screenings, plaintiffs would also need to show why the medical requests were not permissible under § 12112(d).

In sum, the district court correctly held that plaintiffs' complaint does not adequately state a claim for intentional discrimination, or for that matter, any violation of the ADA.

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.