Hilda J. NOEL, Appellant,

v.

**ELK BRAND MANUFACTURING COMPANY, Appellee.**

No. 1998–CA–002052–MR.

Court of Appeals of Kentucky.

March 31, 2000.

Discretionary Review Denied
Sept. 20, 2001.

Randall A. Hutchens, Parker & Hutchens Murray, for Appellant.

Ben S. Fletcher, III, Fletcher, Cotthoff & Willen, Hopkinsville, John S. Gannon, Nashville, TN, for Appellee.

Before: COMBS, HUDDLESTON and KNOPF, Judges.

## OPINION

HUDDLESTON, Judge:

After she lost her job as a seamstress at Elk Brand Manufacturing Company, Hilda J. Noel sued her former employer seeking damages for retaliatory discharge,[1] breach of contract, and discrimination under the Kentucky Civil Rights Act[2] and the Americans with Disabilities Act.[3] Following the taking of discovery depositions and the submission of affidavits, Trigg Circuit Court granted Elk Brand's motion for summary judgment and dismissed Noel's complaint. Noel appeals claiming that the court erred when it determined that there is no genuine issue as to any material issue of fact and that Elk Brand is entitled to judgment as a matter of law.[4]

Noel worked for Elk Brand for almost twenty years before her employment was terminated on August 2, 1996. While employed at Elk Brand, Noel developed severe carpal tunnel syndrome[5] in her left wrist. On January 15, 1996, Noel filed a workers' compensation claim. Following surgery on her left arm, Noel returned to work with restrictions on January 22, 1996. Although she was given a different job, she began to experience swelling in her right wrist and was treated with braces and physical therapy. During this period, she was moved to a non-production job.

A final evidentiary hearing on the merits of Noel's workers' compensation claim was held on July 3, 1996. Approximately thirty days later, she, along with twenty-nine other employees, was laid off. Twenty of the laid-off employees were given "T" status, indicating that they would probably be off work five days or less. The remaining employees, including Noel, were given "P" status, indicating that they would be eligible for recall according to the company's need for their work in the order of their productivity. At the time of the lay-off, Noel had the lowest production average in Elk Brand's plant. Although at least two of the persons given "P" status by Elk Brand were reemployed within two months, Noel did not apply for reemployment.

In January 1997, an Administrative Law Judge rendered an opinion in which he found that Noel has a fifty percent occupational disability as the result of bilateral upper extremity problems which became manifest in February 1994. According to the ALJ:

> tunnel, from forearm to hand, pass tendons, blood vessels and the median nerve, which controls parts of the hand. If the tendons become inflamed and swollen, the median nerve is compressed, and pain, numbness, and a tingling in the first three fingers and base of the thumb result. This nerve disorder, which results from a tendon disorder, is called carpal tunnel syndrome or CTS. Once symptoms of pain and tingling appear, the condition frequently worsens, and permanent nerve damage may occur.

---

1. Ky.Rev.Stat. (KRS) 342.197(1).

2. KRS Chapter 344.

3. 42 United States Code (USC) § 12101 *et seq.*

4. Ky. R. Civ. Proc. (CR) 56.03.

5. Major power movements of the fingers are controlled by muscles in the forearm. The forces are transmitted by long tendons which run along the top and bottom of the hand. In the center of the wrist is a small tunnel—the carpal tunnel—which is formed by wrist bones and a thick ligament. Through this

[Noel] can no longer lift more than 10 lbs, either maximum or frequently, cannot push or pull more than 10 lbs. with either hand and should avoid repetitive use of her upper extremities, use of vibratory tools, extremes in temperature, either hot or cold, or extreme humidity. * * * Therefore, [Noel] can no longer do the type of work in which she was engaged for almost her entire vocational life. This will have a marked effect on her ability to be gainfully employed.[6]

Before analyzing the evidence developed on discovery to determine whether the circuit court erred when it determined that there is no genuine issue as to any material fact, we look to the law governing the granting of summary judgments. According to Kentucky Rule of Civil Procedure (CR) 56.03, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The record must be viewed by the circuit court in a light most favorable to the party opposing the motion for summary judgment and all doubts resolved in her favor. The circuit court "must examine the evidence, not to decide any issue of fact, but to discover if a real issue exists."[7]

"[A] party opposing a properly supported summary judgment motion cannot defeat it without presenting at least some affirmative evidence showing that there is a genuine issue of material fact for trial."[8] Summary judgment "should only be used 'to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent [Noel] to produce evidence at the trial warranting a judgment in [her] favor and against the movant [Elk Brand].'"[9]

We review a summary judgment *de novo* to determine "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law."[10]

## I. BREACH OF CONTRACT

■ Noel claims that there is a material issue of fact as to whether Elk Brand's Employee Manual created a contract between her and the company. Employment in Kentucky is "at will" unless the parties otherwise agree. In *Nork v. Fetter Printing Co.*,[11] this court said that an express disclaimer in an employee manual stating that it was not a contract effectively precluded deviation from the terminable at will doctrine. We made the same observation regarding language in an employee application form which stated that "'[i]t is further agreed that this contract may be terminated at will by either the employer or employee.'"[12]

Noel argues that Elk Brand's disclaimer is materially different from those at issue in *Nork* because the Elk Brand employee handbook does not specifically provide that Noel was an "at will" employee. Further-

6. *Hilda J. Noel v. Elk Brand Mfg. and Special Fund*, Dept. of Workers' Claims No. 94–31002, Opn. p. 11.

7. *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, Ky., 807 S.W.2d 476, 480 (1991).

8. *Id.* at 482.

9. *Id.* at 483 (quoting *Paintsville Hosp. Co. v. Rose*, Ky., 683 S.W.2d 255, 256 (1985)).

10. *Scifres v. Kraft*, Ky.App., 916 S.W.2d 779, 781 (1996).

11. Ky.App., 738 S.W.2d 824, 826 (1987).

12. *Id.* at 825.

more, Noel points out, the handbook states that employees can rely on the company for wages, benefits, holidays, seniority and workforce adjustment. The Elk Brand employee handbook, however, does provide that it is "not a contract." The lack of express "at will" language does not render Elk Brand's disclaimer ineffective, nor does the inclusion of reliance language. Accordingly, Elk Brand employed Noel "at will," and she had no contractual right to continued employment.

■ Noel cites *Shah v. American Synthetic Rubber Corp.*[13] for the proposition that her claim for breach of contract cannot be resolved until there has been a trial on the merits. In *Shah,* the Supreme Court joined "a number of other jurisdictions which hold that parties may enter into a contract of employment terminable only pursuant to its express terms—as 'for cause'—by clearly stating their intention to do so...."[14] Neither Elk Brand nor Noel clearly stated an intent to enter an employment contract terminable only for cause. Elk Brand expressed its intent not to enter a "discharge only for cause" employment contract with Noel by including the phrase "[this] booklet is not a contract" in its employee manual.

In *Nork* we declined to nullify a clearly stated disclaimer because we could not do so without "totally annihilating *Shah's* holding of 'clear intention.'"[15] In order for Noel to prevail on her breach of contract claim, we would have to disregard a disclaimer and create a "discharge only for cause" employment contract in the absence of the intent of both parties to do so. This we may not do. Noel does not claim that there was any contractual agreement between her and Elk Brand other than the Employee Manual. Accordingly, we agree with the circuit court that there is no genuine issue of material fact as to the existence of an employment contract between the parties and that Elk Brand was entitled to judgment as a matter of law on this claim.

## II. RETALIATORY DISCHARGE

■ Noel sought damages for retaliatory discharge claiming that her filing of a workers' compensation claim motivated Elk Brand to discharge her. According to Noel, Jim Long, Elk Brand's general manager, stated that Noel should not wear braces as everyone at the plant would also claim they suffered from carpal tunnel syndrome. Moreover, Noel believes that Long assigned her to an unappealing job and then said he would "wait her out."

Elk Brand asserts that Noel was laid off, not terminated. As earlier noted, Elk Brand laid off thirty employees, one of which was Noel, following a downturn in demand for its products. Elk Brand says that it did not immediately rehire Noel because she had the lowest production average in its plant, not in retaliation for filing a workers' compensation claim. The circuit court based its summary judgment for Elk Brand on the retaliatory discharge claim on Noel's own testimony, as well as other evidence of record. It appeared to the court

from reading the testimony of Hilda Noel as well as her affidavit which she submitted in the Workers' Compensation proceedings and all other evidence of record that the Plaintiff was 'laid off'—not terminated permanently—because of physical restraints which prevented her from performing her job, and the termination was because of non-production rather than [the result of the filing of a] Workers' Compensation Claim.

---

13. Ky., 655 S.W.2d 489 (1983).

14. *Id.* at 492.

15. *Nork, supra,* n. 11, at 827.

In *Firestone Textile Co. Division v. Meadows*,[16] the Supreme Court said that "ordinarily an employer may discharge his at-will employee for good cause, for no cause, or for a cause that some might view as morally indefensible."[17] The *Firestone* court, however, created an exception to the terminable "at-will" doctrine holding that an employee who pursues a workers' compensation claim and is subsequently terminated has a claim for retaliatory discharge against his employer "when the discharge is motivated by the desire to punish the employee for seeking the benefits to which he is entitled by law."[18] The General Assembly codified the *Firestone* holding in Kentucky Revised Statute (KRS) 342.197(1).

In *First Property Management Corp. v. Zarebidaki*,[19] the Supreme Court noted that a plaintiff seeking damages for retaliatory discharge must prove that "the workers' compensation claim was 'a substantial and motivating factor but for which the employee would not have been discharged.'"[20] While Noel avers that Elk Brand retaliated by discharging her because she sought workers' compensation benefits, the circuit court correctly determined that the evidence of record, viewed in the light most favorable to Noel, does not support her claim.

## III. KENTUCKY CIVIL RIGHTS ACT AND AMERICANS WITH DISABILITIES ACT

The circuit court also granted summary judgment in favor of Elk Brand on the issue of whether the company violated the Kentucky Civil Rights Act and/or the Americans With Disabilities Act (ADA). According to the circuit court, "the Kentucky Civil Rights Act provides no more protection than the Americans With Disabilities Act...." Thus, once the court granted summary judgment on Noel's claim under the ADA, it necessarily followed by granting summary judgment on her claim arising under the Kentucky Civil Rights Act.

The Kentucky Civil Rights Act provides that it is unlawful "to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, ... [when] the person is a qualified individual with a disability...."[21] The Act also provides that the general purposes of this chapter are, among other things, "to provide for execution within the state of the policies embodied in ... the Americans with Disabilities Act of 1990...."[22]

The United States Court of Appeals for the Sixth Circuit has addressed the similarities between the Kentucky Civil Rights Act and the ADA. In *Brohm v. J H Properties, Inc.*,[23] the Court said that:

> Under the Kentucky Civil Rights Act, Ky.Rev.Stat. § 344.040(1), it is unlawful for an employer to
>
> > discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employ-

---

16. Ky., 666 S.W.2d 730 (1983).

17. *Id.* at 731.

18. *Id.* at 734.

19. Ky., 867 S.W.2d 185 (1993).

20. *Id.* at 188.

21. KRS 344.040(1).

22. KRS 344.020(1)(a).

23. 149 F.3d 517 (6th Cir.1998).

ment, ... because the person is a qualified individual with a disability....

As the district court explained, the language of the Kentucky Civil Rights Act mirrors the language of both the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., and the Rehabilitation Act, 29 U.S.C. § 701, et seq. Both acts forbid discrimination on the basis of disability.[24]

Accordingly, we analyze Noel's Kentucky Civil Rights claim guided by the ADA.

The circuit court addressed direct and indirect proof analyses under the ADA in granting summary judgment in favor of Elk Brand. The Sixth Circuit in *Monette v. Electronic Data Systems Corp.*[25] said that:

In cases in which the plaintiff alleges that he or she is the victim of discriminatory treatment, a plaintiff may attempt to establish unlawful discrimination by introducing direct evidence of discrimination, including evidence that the employer relied upon the plaintiff's disability in making its employment decision, or by introducing indirect evidence of discrimination to shift the burden of production to the employer to articulate a legitimate, nondiscriminatory reason for making the adverse employment decision.[26]

Elk Brand admits it ended its employment relationship with Noel at least in part as a result of her disability. The Sixth Circuit noted that in direct evidence cases, "[t]he ... burden shifting approach is unnecessary because the issue of the employer's intent ... has been admitted by the defen-

dant in such cases, and the plaintiff has direct evidence of discrimination on the basis of his or her disability."[27] Because of Elk Brand's admission, this is a direct evidence case, and indirect proof is not required.

The *Monette* court observed that the issue in a direct evidence case is "whether the employee is 'otherwise qualified,' with or without reasonable accommodation, to perform the job ...."[28] *Monette* articulates the elements and burdens of proof in direct evidence cases.

(1) The plaintiff bears the burden of establishing that he or she is "disabled."

(2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability: a) without accommodation from the employer; b) with an alleged "essential" job requirement eliminated; or c) with a proposed reasonable accommodation.

(3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.[29]

There are two types of direct evidence cases. In type one the plaintiff is claiming she can function capably in the job. The plaintiff in a type two case claims that a job requirement is not essential or that, if the employer provides reasonable accommodations, she can do the job.[30] The workers' compensation ALJ found that Noel is disabled. Accordingly, Noel has satisfied her burden of proving that she

**24.** *Id.* at 520.

**25.** 90 F.3d 1173 (6th Cir.1996).

**26.** *Id.* at 1178 (citations omitted).

**27.** *Id.* at 1182.

**28.** *Id.*

**29.** *Id.* at 1186.

**30.** *Id.* at 1182.

suffers from a disability. However, since Noel can no longer perform her job at Elk Brand, her ADA claim is not a direct evidence type one case.

Noel argues that she could have performed her job if provided reasonable accommodations. This is a type two, direct evidence argument. In *Monette*, the Sixth Circuit commented on the issues that arise in an accommodation claim:

> In cases in which the plaintiff is seeking some accommodation on the part of the employer, and is claiming that he or she would be qualified to perform the essential functions of the job with such reasonable accommodation, the disputed issues will be whether such accommodation is reasonable, whether such accommodation would impose an undue hardship upon the employer, and/or whether the plaintiff is capable of performing the job even with the suggested accommodation, each of which may also be resolved through direct, objective evidence.[31]

Noel thus had the initial burden of proposing objectively reasonable accommodations. Elk Brand then had the burden of persuasion to show undue hardship.[32]

With regard to each party's respective burdens, the *Monette* court observed:

> Put simply, if the employer claims that a proposed accommodation will impose an undue hardship, the employer must prove that fact. If the employer claims instead that the disabled individual would be unqualified to perform the essential functions of the job even with the proposed accommodation, the disabled individual must prove that he or she would in fact be qualified for the job if

the employer were to adopt the proposed accommodation.[33]

Elk Brand initially argues that even though it laid off Noel as a direct result of her disability, its actions were lawful. Following a decline in work, Elk Brand instituted an employee reduction plan. Under this plan, employees who had the lowest production ratings were laid off first. According to Elk Brand, Noel's disability caused her to have a low production rating and thus it laid her off. Elk Brand believes that *Matthews v. Commonwealth Edison Co.*,[34] supports its action. The Seventh Circuit Court of Appeals stated in *Matthews* that "[e]ven if the individual is qualified, if his employer fires him for any reason other than that he is disabled there is no discrimination 'because of' the disability. This is true even if the reason is the consequence of the disability...."[35]

Noel argues that Elk Brand terminated her because she is disabled. She claims Elk Brand's reasons are pretextual. According to Noel, Elk Brand advertised on the radio seeking new employees shortly after its alleged downturn of work. Subsequent to this reduction in workforce, Noel asserts, Elk Brand rehired the permanent layoffs. Moreover, Noel believes that her alleged lack of production occurred because she worked a non-production job after her surgery.

The circuit court stated that "[s]ince [Noel] admits that her production ratings were low and [Elk Brand] states those ratings were the basis for the lay off, then there is no direct evidence of discrimination in this instance, and [direct evidence] analysis is inapplicable." We believe that the direct evidence analysis is applicable.

---

**31.** *Id.* at 1183.

**32.** *Id.*

**33.** *Id.* at 1184.

**34.** 128 F.3d 1194 (7th Cir.1997).

**35.** *Id.* at 1196.

There is direct evidence of Elk Brand's discrimination because the corporation admits that it laid Noel off, at least in part, because of her disability.

The question then becomes whether Elk Brand terminated Noel's employment simply because she is disabled. *Matthews* is applicable if Elk Brand fired Noel "for any reason other than that [she] is disabled." [36] The court in *Matthews* observed that "[t]here is no contention that the [reduction in work force] was a pretext for getting rid of disabled workers or workers belonging to any other group protected by federal antidiscrimination law." [37]

Such a contention has been made in the instant case. Elk Brand claims it laid off Noel for non-productivity, even though caused by her disability; Noel claims Elk Brand discharged her because she is disabled.

Since a material issue of fact remains as to the circumstances surrounding Noel's departure from Elk Brand, we must analyze the issue of reasonable accommodation. Noel bears the initial burden of showing the accommodations she sought were objectively reasonable.[38] Noel advances three accommodations: (1) she could have filled other positions at Elk Brand; (2) the requirements in her previous job could have been modified; and (3) Elk Brand should have allowed her to complete physical therapy which would have permitted her to return to her previous job.

The *Monette* court noted that under the ADA

"[R]easonable accommodation" ... include[s] "job restructuring, part-time or modified work schedules, [and] reassignment to a vacant position." If, perhaps, an employer knows that a position for which the disabled applicant is qualified will become vacant in a short period of time, the employer may be required to offer the position to the employee.[39]

According to Noel, Elk Brand's general manager Jim Long stated that other jobs were open at about the time Elk Brand discharged her.

 Elk Brand argues that the jobs opened over a month after Noel's discharge and that she failed to apply for them. Noel responds that she did not apply because Elk Brand told her the layoff was permanent and that it would never hire her again. The *Monette* court commented that "employers simply are not required to keep an employee on staff indefinitely in the hope that some position may become available some time in the future." [40] With regard to vacancies that will become available in a short time, the *Monette* court cited to 29 Code of Federal Regulations (C.F.R.) pt. 1630 (1996), which gives an example of short time as being within a week.[41] It is not a reasonable accommodation to require an employer to offer a position to an employee that becomes vacant a month after the employee's discharge. Similarly, it is not a reasonable accommodation to require an employer to retain an employee based on the mere possibility an appropriate job may become available in the future. Accordingly, Noel's first proposed accommodation, that she could have filled other positions at Elk Brand, is unreasonable.

---

36. *Id.*

37. *Id.* at 1197.

38. *Monette,* 90 F.3d at 1186.

39. *Id.* at 1187 (quoting 42 United States Code (U.S.C.) § 12111(9)(A)-(B)).

40. *Id.*

41. *Id.*

Noel next asserts that the requirements in her previous job could have been modified. Noel bears the initial burden of showing this accommodation is objectively reasonable.[42] Noel's previous job required repetitive arm movements and the use of vibrating tools. Noel does not tell us how Elk Brand could have modified her previous job to accommodate her disability. The United States District Court for the District of Columbia observed that, "the term reasonable accommodation may include job restructuring [and] part-time or modified work schedules. However, the ADA does not require an employer to reallocate job duties in order to change the essential function of a job."[43] A plaintiff cannot merely state that her job could have been modified and thereby sustain her burden of showing the proposed accommodation is objectively reasonable. Thus, Noel's second proposed accommodation is not reasonable.

Noel's final proposed accommodation is that Elk Brand should have allowed her to complete physical therapy, thus allowing her to return to her previous job. Elk Brand contends that following the layoffs, her job was no longer available. There is a genuine issue of fact as to whether Elk Brand's discharge of Noel was a pretext for discriminating against her because of her disability. Therefore, we must examine whether under the ADA an employer must allow an employee time away from work for rehabilitation.

According to the ADA, a " 'reasonable accommodation' may include ... job restructuring, part-time or modified work schedules, reassignment to a vacant position; acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities."[44] The inclusion of the language "and other similar accommodations" indicates that Congress did not intend for the list to be exhaustive. Noel believes that if Elk Brand had permitted her to complete physical therapy, she could have returned to her job. Allowing an employee to "use ... accrued paid leave, or providing additional unpaid leave, for necessary treatment" is a reasonable accommodation under the ADA.[45]

The Workers' Compensation ALJ found, however, that Noel "should avoid repetitive use of her upper extremities [and] use of vibratory tools."[46] Moreover, the ALJ determined that, "[Noel] can no longer do the type of work in which she has engaged for almost her entire vocational life."[47] According to this finding (which Noel does not challenge), even if Elk Brand allowed Noel time off for therapy, she still could not have returned to her previous job.

Seeking leave would be a reasonable accommodation for Noel. Yet there is no material issue of fact as to whether that leave would have allowed Noel to perform her previous job. She can no longer use vibrating tools or perform repetitive motions. With regard to reasonable accommodations and the essential functions of a

---

42. *Id.* at 1186.

43. *Dorchy v. Washington Metro. Area Transit Auth.,* 45 F.Supp.2d 5, 13 (D.D.C.1999) (quoting *Soto–Ocasio v. Federal Express Corp.,* 150 F.3d 14, 20 (1st Cir.1998)(internal quotations omitted) (alteration in original)).

44. 42 U.S.C. § 12111(9)(A)-(B).

45. Am.Jur.2d New Topic Service, *Americans with Disabilities Act* § 64 (1992).

46. *Noel,* Dept. Of Workers' Claims No. 94–31002, Slip Opn. p. 11.

47. *Id.*

job, the District of Columbia District Court observed that, "[i]f the position of a B Machinist requires performance of certain tasks essential to the job and [the former employee] cannot perform those tasks with a reasonable accommodation, [the employer] is not required by the ADA to change the essential functions of the job." [48] Similarly, Elk Brand is not required by the ADA to change the essential functions of Noel's previous job. Since Noel has not met her burden of demonstrating an objectively reasonable accommodation, she has failed to establish a *prima facie* case under the ADA.

■ In addition to her ADA claim, Noel also alleged discrimination under the Kentucky Civil Rights Act. The ADA provides that the Act should not limit or invalidate state law remedies.[49]

> The ADA provision leaving intact the protections afforded under other laws allows a plaintiff to choose to pursue employment-related claims under a state law that does not confer greater substantive rights, or even confers fewer substantive rights, than does the ADA, if the plaintiff's situation is protected under the state law and the remedies are greater.[50]

Thus, while the ADA can be used to guide Kentucky Civil Rights Act claims, the ADA is not a ceiling for those claims. Accordingly, we must determine whether the circuit court also appropriately granted summary judgment as to Noel's Kentucky Civil Rights claim.

This Court has said, with regard to Title VII and the Kentucky Civil Rights Act, that "[t]he Kentucky Civil Rights Act (KRS 344.010 *et seq.*) tracks Title VII, but expressly provides broader relief than found on the face of the federal statute, 'including damages for humiliation, personal indignity and other intangible injuries.'" [51] Noel states that Jim Long and other supervisors at Elk Brand harassed and humiliated her. Thus, Noel has alleged injuries to her personal dignity.

However, unlike the *Kirkwood* case where this Court determined that the plaintiff had established a *prima facie* KRS Chapter 344 case of sexual and racial discrimination, Noel has not established a *prima facie* case of disability discrimination under KRS Chapter 344.[52] With regard to Title VII and the ADA:

> As is true of Title VII, the goal of Title I of the ADA is to insure access to equal employment opportunities based on merit. However, while Title VII prohibits any consideration of personal characteristics such as race or national origin, Title I of the ADA requires employers to consider whether an accommodation can remove the barrier created by an individual's disability.[53]

The ADA has been interpreted as requiring a plaintiff to initially show a proposed accommodation is objectively reasonable.[54] Noel has failed to establish objectively reasonable accommodations under the ADA.

■ A question that arises is whether KRS 344.030(1), which defines a "qualified

**48.** *Dorchy,* 45 F.Supp.2d at 13.

**49.** 42 U.S.C. § 12201(b).

**50.** Am.Jur.2d New Topic Service, *Americans with Disabilities Act* § 29 (1992).

**51.** *Kirkwood v. Courier–Journal,* Ky.App., 858 S.W.2d 194, 198 (1993)(quoting *Mitchell v. Seaboard Sys. R. R.,* 883 F.2d 451, 454 (6th Cir.1989)).

**52.** *Id.* at 199.

**53.** Am.Jur.2d New Topic Service, *Americans with Disabilities Act* § 28 (1992).

**54.** *Monette,* 90 F.3d at 1186; *Vande Zande v. State of Wisconsin Dep't of Admin.,* 44 F.3d 538, 543 (7th Cir.1995).

person with a disability," places the initial burden of showing a proposed accommodation is reasonable on the employee. The statute provides, in part, that:

> [A] "[q]ualified individual with a disability" means an individual with a disability as defined in KRS 344.010 who, with or without reasonable accommodation, can perform the essential functions of the employment position that the individual holds or desires unless an employer demonstrates that he is unable to reasonably accommodate an employee's or prospective employee's disability without undue hardship on the conduct of the employers' business.

Placing the initial burden on the employee to demonstrate objectively reasonable accommodations effectuates the purpose of the Kentucky Civil Rights Act with respect to individuals with disabilities. KRS 344.020 provides, in part, that:

> (1) The general purposes of this chapter are:
>
> (a) To provide for execution within the state of the policies embodied in ... the Americans with Disabilities Act of 1990 (P.L. 101–366) .... [and]
>
> (b) To safeguard all individuals within the state from discrimination because of ... the person's status as a qualified individual with a disability...."

Since the purpose of the Kentucky Civil Rights Act with respect to individuals with disabilities is to adopt the policies of the ADA at the state level and safeguard those individuals from discrimination, the interpretations of the ADA which place the initial burden of proposing reasonable accommodations on the employee should also apply to KRS 344.030(1). Under that statute the employer has the burden of persuasion to demonstrate undue hardship. However, if the employee does not demonstrate an objectively reasonable accommodation, the employer is put in the position of showing undue hardship without knowing what reasonable accommodations the employee seeks, *e. g.*, Noel's nondescript proposal of a modification accommodation.

■ An employer should, of course, be involved in the search for a reasonable accommodation. Often the employer will possess superior knowledge as to the essential functions of the employee's job and thus may know how to accommodate the employee when the employee does not. Yet, the initial burden of persuasion to show an objectively reasonable accommodation remains with the employee. Noel has not satisfied this burden.

Noel has also briefed the issue of whether she is entitled to punitive damages. The circuit judge declined to rule on this issue as he found it premature. We, too, find it unnecessary to address this issue.

The judgment is affirmed.

ALL CONCUR.