RENDERED: MAY 16, 2025; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0688-MR

JAMES ADAM HAWKINS                                         APPELLANT


APPEAL FROM SCOTT CIRCUIT COURT
v.       HONORABLE KATHRYN H. GABHART, JUDGE
ACTION NO. 20-CI-00100


BOARD OF EDUCATION OF SCOTT
COUNTY                                                          APPELLEE



OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, CETRULO, AND A. JONES, JUDGES.

JONES, A., JUDGE: James Hawkins appeals from the Scott Circuit Court's order

granting summary judgment in favor of the Board of Education of Scott County

("Board") on his claim for disability discrimination under the Kentucky Civil

Rights Act ("KCRA") (KRS[1] 344.010 *et seq*.). Hawkins, a diabetic, was

---

[1] Kentucky Revised Statutes.

terminated from his position as a bus mechanic after becoming insulin-dependent and disqualified from maintaining a commercial driver's license with passenger and school bus endorsements. The circuit court concluded that Hawkins could not perform the essential functions of his position and failed to identify a reasonable accommodation that would have permitted him to remain employed. Finding no genuine issue of material fact and no error in the trial court's application of the governing law, we affirm.

## I. BACKGROUND

James Hawkins began working for the Scott County Board of Education in October 2013 as a bus driver. In April 2017, he transferred into a bus mechanic position. According to the Board-approved job description, mechanics were required to hold and maintain a valid Kentucky driver's license and a Class B commercial driver's license ("CDL") with passenger ("P") and school bus ("S") endorsements. These credentials were not merely technical requirements. Mechanics were expected to test drive buses after repairs, drive operational buses to the scene of breakdowns, and substitute on bus routes when driver shortages occurred.

Bobby Gillespie, Hawkins's direct supervisor, testified that mechanics, including Hawkins, were required to fill in as substitute drivers at least once per week. Hawkins testified that he personally drove routes approximately

twice per week. Superintendent Dr. Kevin Hub confirmed that mechanics were regularly relied upon to substitute for absent drivers due to ongoing staffing shortages.

On November 19, 2018, during a physical examination required to renew his CDL, he was informed that his diabetes had progressed to the point that insulin therapy was now required. Because insulin-dependent diabetes is a disqualifying condition under applicable CDL regulations absent a federal waiver, Hawkins was no longer eligible to maintain his CDL and endorsements. He promptly notified his supervisor that insulin use would interfere with his ability to retain his license.

Superintendent Hub met with Hawkins to discuss the situation. He advised Hawkins that a valid CDL was a condition of employment for the mechanic position. Superintendent Hub offered Hawkins a transfer to a non-driving role, such as bus aide or monitor, but Hawkins declined to consider any position other than mechanic.[2] Superintendent Hub then gave Hawkins the option to resign voluntarily, which would preserve his rehire eligibility and allow him to receive payment for accrued leave. Hawkins also declined that option. Although

_____

[2] There is some dispute in the record regarding what transpired at the meeting. At one point, Hawkins denied that Superintendent Hub offered him a different position, but in his brief Hawkins states that he was not interested in the bus aide position because it was part-time and paid less. Ultimately, however, this factual discrepancy is not dispositive.

he was advised of his right to request a hearing under the district's administrative appeal policy, he did not pursue one. On or about December 4, 2018, the Board terminated Hawkins's employment.

At no point prior to his termination did Hawkins request an accommodation or indicate an intention to seek a federal medical waiver. While federal regulations allow insulin-dependent drivers to apply for a waiver to retain CDL eligibility, and Kentucky law recognizes such waivers in some cases, Hawkins did not pursue one or communicate any plan to do so before his termination.[3]

On February 5, 2020, Hawkins filed suit against the Board, alleging disability discrimination in violation of the Kentucky Civil Rights Act. He claimed that he was a qualified individual with a disability who was terminated because of his condition and that the Board failed to reasonably accommodate him. After the parties engaged in discovery, the Board moved for summary judgment, arguing that Hawkins was no longer qualified to perform the essential functions of his position, with or without reasonable accommodation, because he lacked the required license. The circuit court granted summary judgment in the Board's favor, concluding that a valid CDL with appropriate endorsements was an essential

---

[3] Under 702 Kentucky Administrative Regulation ("KAR") 5:080, Kentucky will recognize a federal medical examiner's certificate under 49 United States Code of Federal Regulations ("C.F.R.") Part 391 (which includes § 391.46 for insulin-dependent drivers) if one is obtained.

requirement of the job and that Hawkins failed to propose any reasonable accommodation or present evidence creating a genuine dispute of material fact. This appeal followed.

## II. STANDARD OF REVIEW

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR[4] 56.03. The movant bears the initial burden of demonstrating that no genuine issue of material fact exists. Once that burden is met, the opposing party must present at least some affirmative evidence showing that a material issue remains for trial. *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 482 (Ky. 1991).

A party responding to a properly supported motion for summary judgment may not rest on allegations in the pleadings but must come forward with evidence of specific facts showing that there is a genuine issue for trial. *Versailles Farm Home & Garden, LLC v. Haynes*, 647 S.W.3d 205, 209 (Ky. 2022). The circuit court must view the record in the light most favorable to the nonmoving party and resolve all doubts in that party's favor. *Steelvest*, 807 S.W.2d 476.

---

[4] Kentucky Rules of Civil Procedure.

We review a trial court's grant of summary judgment *de novo*, as it involves only questions of law. *Isaacs v. Sentinel Ins. Co. Ltd.*, 607 S.W.3d 678, 681 (Ky. 2020). Our task on appeal is to determine whether the circuit court correctly found that there were no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law. *Feltner v. PJ Operations, LLC*, 568 S.W.3d 1, 3 (Ky. App. 2018).

### III. ANALYSIS

Hawkins argues the circuit court erred in granting summary judgment because, in his view, there were factual disputes as to whether he was a qualified individual with a disability and whether the Board failed to engage in the interactive process required by law. The parties do not dispute that Hawkins's diabetes constitutes a disability under the Kentucky Civil Rights Act. Nor do they dispute that his position as a school bus mechanic required a valid commercial driver's license with passenger and school bus endorsements. The Board contends, however, that Hawkins was no longer qualified for the position once he became insulin-dependent and lost eligibility to maintain a CDL. It further asserts that no reasonable accommodation was requested or proposed prior to his termination. We address each of these arguments in turn.

The Kentucky Civil Rights Act makes it an unlawful employment practice for an employer "[t]o discharge any individual, or otherwise to

-6-

discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, . . . because the person is a qualified individual with a disability[.]" KRS 344.040(1)(a). The KCRA is modeled on the federal Americans with Disabilities Act ("ADA"), and Kentucky courts routinely look to federal case law interpreting the ADA for guidance in applying the KCRA.[5] *Hallahan v. The Courier-Journal*, 138 S.W.3d 699, 706 (Ky. App. 2004).

A plaintiff may prove a violation of the KCRA either by presenting direct evidence of discrimination, or by using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492, 495-96 (Ky. 2005). To establish a *prima facie* case of disability discrimination, a plaintiff must demonstrate: (1) that he has a disability as defined by the Act; (2) that he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) that he suffered an adverse employment action because of the disability. *Id.* at 496. If the plaintiff establishes these elements, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment decision. *Id.* If the employer does so, the burden returns to the

---

[5] The KCRA still follows the pre-2008 ADA's definition of disability: "(a) [a] physical or mental impairment that substantially limits one (1) or more of the major life activities of the individual; (b) [a] record of such an impairment; or (c) [b]eing regarded as having such an impairment." KRS 344.010(4); *see also Larison v. Home of the Innocents*, 551 S.W.3d 36, 42-43 (Ky. App. 2018).

plaintiff to prove that the stated reason was a pretext for unlawful discrimination. *Id.*

Here, there is no dispute that Hawkins's diabetes qualifies as a disability and that he was terminated because he was denied a CDL after becoming insulin-dependent. The dispositive questions are whether Hawkins was qualified for the position, and whether the Board violated the KCRA by failing to consider a reasonable accommodation or engage in the required interactive process.

An individual is "otherwise qualified" if he can perform the essential functions of the employment position, with or without reasonable accommodation. *Id.* However, the KCRA "does not require an employer to reallocate job duties in order to change the essential function of a job." *Noel v. Elk Brand Mfg. Co.*, 53 S.W.3d 95, 104 (Ky. App. 2000). The term "essential functions" refers to the fundamental job duties of the position in question, not marginal or incidental tasks. *Rorrer v. City of Stow*, 743 F.3d 1025, 1039 (6th Cir. 2014).

"Failure-to-accommodate cases typically fall into two broad categories: (1) cases where the plaintiff does not want an accommodation but instead makes 'the straightforward claim' that he can do his job 'as it exists'; and (2) 'those in which the plaintiff challenges a particular job requirement as unessential or claims that he or she can do the job with reasonable accommodations on the part of the employer.'" *Cooper v. Dolgencorp, LLC*, 93

F.4th 360, 369 (6th Cir. 2024) (quoting *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1182 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012)). Hawkins makes arguments under both categories. First, he argues that he was otherwise qualified for the mechanic position without an accommodation because having a CDL is not an essential function of being a school bus mechanic. Second, and in the alternative, Hawkins argues that he was otherwise qualified for the mechanic position with a reasonable accommodation – a medical waiver for the CDL.

Not all job functions are essential. *Cooper*, 93 F.4th at 369. "A job function may be considered essential because: (1) the position exists to perform that function; (2) there are a limited number of employees available among whom the performance of that job function can be distributed; or (3) the function is highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function." *Keith v. County of Oakland*, 703 F.3d 918, 925 (6th Cir. 2013). In assessing whether a job function is essential, courts may consider several factors, including the employer's judgment, the consequences of not requiring the employee to perform the function, the current and past work experience of employees in similar jobs, and the amount of time spent performing the function. *Wyatt v. Nissan North America, Inc.*, 999 F.3d 400, 418 (6th Cir. 2021); *Keith*, 703 F.3d at 925-26.

-9-

The circuit court found that possessing a valid CDL was an essential function of the school bus mechanic position, and that Hawkins was no longer qualified for the role once he lost his CDL license. The court cited the Board's written job description and credited testimony from Superintendent Hub and Supervisor Gillespie, both of whom explained that mechanics were regularly expected to test drive buses, respond to breakdowns by operating other buses, and serve as substitute drivers on school routes. Because these functions required a CDL, and Hawkins had not obtained a waiver or proposed any accommodation before his termination, the circuit court concluded that no genuine issue of material fact existed as to his qualification for the job.

Our review of the record supports that conclusion. Hawkins admitted in his deposition that he was required to test drive buses after making repairs, to drive working buses to the site of disabled ones, and to serve as a substitute driver on school bus routes. He testified that he filled in as a driver approximately twice per week and acknowledged that all five mechanics employed by the district at the time were expected to assist with route coverage due to persistent driver shortages. Hawkins also agreed that these expectations were not merely occasional or incidental but formed part of the day-to-day realities of the mechanic position. Additionally, the Board's job description lists a minimum of four years' experience working on larger vehicles such as school buses, underscoring the specialized

-10-

nature of the role and the practical expectation that mechanics be able to operate the vehicles they service.

Although determining whether a job function is essential is generally a fact question, summary judgment is appropriate where the record contains no genuine dispute on the issue. *Wyatt*, 999 F.3d at 418. Here, the Board's judgment, the written job requirements, the undisputed testimony from Hawkins and his supervisors, and the operational structure of the department all indicate that holding a CDL was essential to performing the bus mechanic role as it actually existed. The Board was not required to reassign Hawkins's driving responsibilities to other employees or restructure the job to eliminate them. *Noel*, 53 S.W.3d at 104. Therefore, based on the record, we hold that the circuit court properly concluded that possessing a CDL with S and P endorsements was an essential function of the school bus mechanic position. *See Cummings v. Dean Transp., Inc.*, 9 F. Supp. 3d 795, 804 (E.D. Mich. 2014) (granting summary judgment where it was undisputed that a school bus mechanic was required to "legally drive a school bus so that he would be able to road test, move buses, conduct on-site repairs, and be able to drive school buses on a substitute basis").

Hawkins alternatively argues that even if a CDL was essential, the Board failed to consider whether he could have obtained a federal medical waiver, and in doing so, failed to engage in the interactive process required under the

-11-

KCRA. This argument misstates the nature of the employer's obligation and overlooks Hawkins's own responsibility to initiate and participate in that process. The KCRA, like the ADA, requires employers to make reasonable accommodations for known disabilities, including consideration of leave or reassignment where appropriate. However, the duty to accommodate is not self-executing. An employee must first inform the employer of the disability and request an accommodation that would allow continued employment. *Hallahan*, 138 S.W.3d at 708. Once that occurs, the employer must engage in an interactive process to explore potential accommodations. *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir. 2007). But where no accommodation is requested, the duty to engage in that process does not arise. *See Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 202 (6th Cir. 2010) ("[T]he employee is saddled with the burden of proposing an accommodation and proving that it is [objectively] reasonable.").

There is no dispute that Hawkins never applied for or obtained a federal diabetes exemption under 49 C.F.R. § 391.46. Nor did he inform the Board that he intended to pursue one, request leave to do so, or provide any documentation regarding the waiver process. Superintendent Hub met with Hawkins after learning of his disqualification and offered him a transfer to a non-driving position, which Hawkins declined. Superintendent Hub also offered Hawkins the opportunity to resign in good standing, which would have preserved

-12-

his rehire eligibility and allowed him to reapply if and when he became CDL-eligible. That option, too, was rejected. At no point before his termination did Hawkins indicate that a medical waiver was feasible or suggest a temporary leave of absence to obtain one.

While a waiver might have been available in theory, eligibility is not automatic. To qualify, a driver must show that their insulin-treated diabetes is well-controlled, that they have maintained compliance with a monitoring regimen, and that there have been no disqualifying hypoglycemic episodes for a defined period. *See* 49 C.F.R. § 391.46. These are individualized medical determinations. Hawkins, not the Board, was in the best position to know whether he might qualify. The Board, by contrast, was not privy to his medical records and had no independent duty to investigate the waiver process or assess his eligibility based on incomplete information.

Hawkins attempts to shift the burden onto the employer by arguing that the Board failed to propose the waiver as an accommodation. But the law does not require an employer to be omniscient. "Where the disability, resulting limitations, and necessary reasonable accommodations are not open, obvious, and apparent to the employer, . . . the initial burden rests primarily upon the employee . . . to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations." *Taylor v. Principal Fin. Group Inc.*, 93 F.3d

155, 165 (5th Cir. 1996); *see also Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1046-47 (6th Cir. 1998).  Hawkins did not do so here.

To the extent Hawkins contends that the Board could have reassigned his driving duties to other mechanics while he remained in his position, that argument fails for the reasons already discussed.  An employer is not required to reassign essential job functions as a form of accommodation.  *Noel*, 53 S.W.3d at 104.

## IV. CONCLUSION

The record supports the circuit court's order granting summary judgment to the Board.  The circuit court correctly determined that maintaining a valid CDL with the required endorsements was an essential function of the school bus mechanic position.  Hawkins was no longer qualified for the role once he became insulin-dependent and ineligible to hold that credential.  He did not request an accommodation, identify a potential waiver, or engage in the interactive process.  The Board was not obligated to restructure the position or anticipate accommodations not proposed.  Accordingly, we affirm the order of the Scott Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Edward E. Dove
Lexington, Kentucky

BRIEF FOR APPELLEE:

Joshua M. Salsburey
James T. McSweeney
Lexington, Kentucky